UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL J. McNALLY, as he is TRUSTEE,
MASSACHUSETTS LABORERS' HEALTH AND
WELFARE FUND and NEW ENGLAND LABORERS'
TRAINING TRUST FUND; JAMES MERLONI, JR.,
as he is TRUSTEE, MASSACHUSETTS LABORERS'
PENSION FUND and MASSACHUSETTS LEGAL
SERVICES FUND; MARTIN F. WALSH, as he is
TRUSTEE, MASSACHUSETTS LABORERS'
ANNUITY FUND,
    Plaintiffs

    vs.

G. CONWAY, INC.,
    Defendant

    and

BOWDOIN CONSTRUCTION CORP.,
    Reach-and-Apply Defendant

    and

FLEET,
    Trustee

C.A. No. 05-10072 MEL

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

**I.**   **INTRODUCTION**

   This is an action brought to collect contributions due employee benefit funds under the terms of a collective bargaining agreement.  Plaintiffs (hereinafter "the Funds") are employee benefit plans.  Defendant G. Conway, Inc. (hereinafter "Conway") is a Massachusetts corporation.  Reach-and-apply defendant Bowdoin Construction Corp. (hereinafter "Bowdoin")

is a Massachusetts corporation for whom Conway worked as a subcontractor on projects for which contributions are due and which are the subject of this claim.  The Funds have a legal or equitable interest in any payments due Conway from Bowdoin for work conducted on these or any other projects.  The action has been brought pursuant to §§502(a)(3) and 515 of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1132(a)(3) and 1145 (hereinafter "ERISA").

The Court has exclusive jurisdiction of this action pursuant to §§502(a)(3) and (f) of ERISA, 29 U.S.C. §§1132(a)(3) and (f), without respect to the amount in controversy or the citizenship of the parties.

At this juncture, plaintiffs are before the Court on a Motion for Preliminary Injunction.  Plaintiffs seek an order enjoining reach-and-apply defendant Bowdoin and its agents, servants, employees, attorneys, and upon those persons in active participation or concert with it and those persons acting at its command who receive actual notices of a Preliminary Injunction order by personal service or otherwise, and each and every one of them, from secreting, concealing, destroying, damaging, selling, transferring, pledging, encumbering, assigning, or in any way or manner disposing of or reducing the value of, or making any payment to defendant Conway on account of sums that are due or will hereafter become due Conway from Bowdoin.

**II.     STATEMENT OF FACTS**

On or about May 13, 1980, defendant Conway agreed in writing to be bound to the terms of the Restated Agreements and Declarations of Trust establishing Plaintiff Funds, to the terms of collective bargaining agreements requiring contributions to Plaintiff Funds; and to any successor agreements.  See Complaint, par. 11; Affidavit of Philip Mackay ("Mackay Aff."), par. 2.  Because of the short form agreement, Conway has been a party to successive collective

bargaining agreements, including the agreement which is effective from June, 2004 through May, 2007 ("Agreement").  Mackay Aff., par. 3.  The Agreement, like its predecessor agreements, requires employers to make contributions to Plaintiff Funds for each hour worked by covered employees and specifies the amount to be contributed by an employer to each of Plaintiff Funds for each hour worked.  Employers are also required to file monthly Remittance Reports, on which employers calculate the payments they owe.  Id.

     In or about October, 2004, an auditor employed by Plaintiff Funds conducted an audit of Conway's books and records.  Mackay Aff., par. 4.  The Funds' auditor determined that Conway owed the Funds $70,749.97 in unpaid contributions for the period June through August, 2004, together with $1,361.89 in underpayments and interest on late paid contributions.  Id.  In response to these audit results, counsel for Plaintiff Funds sent Conway a letter on or about November 10, 2004 which requested that the audit balance and all additional contributions and interest be paid.  Mackay Aff., par. 5.  Conway has since paid down some of the contributions owed for the period of the audit, June through August, 2004, but has concurrently amassed new contributions owed for the months of September through December, 2004.  Mackay Aff., par. 6.  As a result, Conway currently owes a total of $105,168.73 in unpaid fringe benefit contributions, plus an as yet unliquidated amount for the period January, 2005 through the present.  Mackay Aff., par. 7.

     Further, Section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1132, provides that in any action brought to enforce §1145 of ERISA, the Court shall award the Plan the unpaid contributions, interest on the unpaid contributions, an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided for under the Plan, reasonable attorneys' fees and costs, and such other legal or equitable action as the

3

Court deems appropriate. If the $105,168.73 in unpaid fringe benefit contributions owed by Conway is paid by May 31, 2005, the company will owe the Funds $3,989.60 in interest on all unpaid contributions. Mackay Aff., par. 8. Liquidated damages of at least $21,033.75 are also due under the terms of the collective bargaining agreement. Mackay Aff., par. 9. Finally, Conway owes at least $1,900.00 in attorney's fees and $165.20 in costs. See Affidavit of Anne R. Sills.

It has been brought to the Funds' attention that Conway worked as a subcontractor to Bowdoin on the construction of a Stop & Shop Supermarket in Revere, Massachusetts beginning in June, 2004. Mackay Aff., par. 10. In fact, Bowdoin admitted in its Answer to the Funds' Complaint that "Conway has been working as a subcontractor to Bowdoin on recent projects." See Answer, par. 25. In its sixth Affirmative Defense, Bowdoin further states that it has not yet paid Conway the amount owed for its work as a subcontractor on the project that is the subject of this action because Bowdoin is awaiting payment from the project's owner. See Answer. The Funds have a legal or equitable interest in any payments due Conway from Bowdoin for the Stop & Shop project or any other projects on which Conway worked as a subcontractor to Bowdoin. Payments held by Bowdoin cannot be attached or taken on execution except pursuant to G.L. c. 214, §3(6).

### III.    ARGUMENT

Injunctive relief is specifically authorized by §502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). Laborers' Fringe Benefit Funds, Detroit and Vicinity v. Northwest Concrete & Construction, Inc., 640 F.2d 1350, 1352 (6th Cir. 1981) ("Northwest Concrete"). A motion for preliminary injunction is addressed to the sound discretion of the court. LeBeau v. Spirito, 703

F.2d 639, 642 (1st Cir. 1983). The standard to be used by the district court in ruling on a motion for preliminary injunction is well established.

> In deciding whether to grant a preliminary injunction, a district court must weigh the following four factors: 1) the likelihood of the movant's success on the merits; 2) the potential for irreparable harm to the movant; 3) a balancing of the relevant equities, i.e. "the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld", Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); and 4) the effect on the public interest of a grant or denial of the injunction.

Gately v. Comm. of Mass., 2 F.3d 1221, 1224 (1st Cir. 1993), cert. denied, 114 S.Ct. 1832 (1994) ("Gately"); Caroline T. v. Hudson School Dist., 915 F.2d 752, 754-755 (1st Cir. 1990); Agency Rent-A-Car, Inc. v. Connolly, 686 F.2d 1029, 1034 (1st Cir. 1982). Examination of each of these factors establishes that plaintiffs are entitled to the relief requested.

**1)    Likelihood of Success**

"[T]he sine qua non of [the preliminary injunction standard] is whether the plaintiffs are likely to succeed on the merits." Gately, supra, 2 F.3d at 1225, citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993). The exhibits and affidavits on file establish that plaintiffs will prevail on the merits.

Massachusetts General Laws chapter 214, §3(6) is the Commonwealth's reach-and-apply statute. Under this statute, the Court must engage in a two-step process to establish (1) the indebtedness of the defendant and (2) that the defendant has property that can be reached by the plaintiffs in satisfaction of the defendant's debt. Hunter v. Youthstream Media Networks, Inc., 241 F.Supp.2d 52, 57 (D.Mass. 2002). This two-step process is further explained as follows:

> The first step is in the nature of an action at law and requires the plaintiff to establish the debt owed by the principal defendant to the plaintiff. Massachusetts Electric Company v. Athol One, Inc., 391 Mass. 685 (Mass. 1984) ("in the first step," the plaintiff must

5

> show the existence of a debt owed to the plaintiff by "the principal defendant") . . . "The second step involves the process of satisfying the debt," . . . "out of the property held by one who owes a debt to the principal defendant." <u>Massachusetts Electric Company v. Athol One, Inc.</u>, 391 Mass. at 687 . . . Under chapter 214, the plaintiff "must show that the property, by its nature, is incapable of attachment or of taking on execution in a legal action." <u>Massachusetts Electric Company v. Athol One, Inc.</u>, 391 Mass. at 687 . . .

<u>Trustees v. Baldwin Steel Co., Inc.</u>, 2001 WL 1555539, *3-*5 (D.Mass. 2001).

     In the instant case, Conway is indebted to the Funds in that it has failed to pay fringe benefit contributions that are contractually owed the Funds. As stated above, Conway is signatory to a collective bargaining agreement that requires it to make contributions to Plaintiff Funds for each hour worked by covered employees and specifies the amount to be contributed by an employer to each of Plaintiff Funds for each hour worked. Mackay Aff., par. 3. In or about October, 2004, an auditor employed by Plaintiff Funds conducted an audit of Conway's books and records. Mackay Aff., par. 4. The Funds' auditor determined that Conway owed the Funds $70,749.97 in unpaid contributions for the period June through August, 2004, together with $1,361.89 in underpayments and interest on late paid contributions. <u>Id.</u> Conway has since paid down some of the contributions owed for the period of the audit, June through August, 2004, but has concurrently amassed new contributions owed for the months of September through December, 2004. Mackay Aff., par. 6. As a result, Conway currently owes a total of $105,168.73 in unpaid fringe benefit contributions, plus an as yet unliquidated amount for the period January, 2005 through the present. Mackay Aff., par. 7.

     Further, the Funds wish to satisfy the defendant's debt, in part, out of payments owed Conway by Bowdoin. It has been brought to the Funds' attention that Conway worked as a subcontractor to Bowdoin on the construction of a Stop & Shop Supermarket in Revere,

Massachusetts beginning in June, 2004.  Mackay Aff., par. 10.  In fact, Bowdoin admitted in its Answer to the Funds' Complaint that "Conway has been working as a subcontractor to Bowdoin on recent projects."  See Answer, par. 25.  In its sixth Affirmative Defense, Bowdoin further states that it has not yet paid Conway the amount owed for its work as a subcontractor on the project that is the subject of this action because Bowdoin is awaiting payment from the project's owner.  See Answer.  The Funds have a legal or equitable interest in any payments due Conway from Bowdoin for the Stop & Shop project or any other projects on which Conway worked as a subcontractor to Bowdoin. Payments held by Bowdoin cannot be attached or taken on execution except pursuant to G.L. c. 214, §3(6).

**2)    Irreparable Harm**

If reach-and-apply defendant Bowdoin was to secret, conceal, destroy, damage, sell, transfer, pledge, encumber, assign, or in any way or manner dispose of or reduce the value of, or make any payment to defendant Conway on account of sums that are due or will hereafter become due Conway from Bowdoin, it would render the Funds unable to fully satisfy their fiduciary and statutory obligations to the Funds' beneficiaries and participants.  "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled . . ." Central States Pension Fund, 472 U.S. at 571.  The Funds are entitled to contributions for all work performed by Conway's employees.  Mackay Aff., par. 3.

**3)    Balancing of Harms**

"The heart of the matter is whether 'the harm caused plaintiff without the injunction, in light of the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause defendants.'"  Gately, supra, 2 F.3d at 1225, quoting Vargas-Figueroa v. Saldana, 826 F.2d 160, 162 (lst Cir. l987) (emphasis in original).

7

No harm can come to the reach-and-apply defendant by being enjoined from disbursing payments that it already owes the defendant for work done by the defendant on its projects. The demonstrated harm to plaintiffs far outweighs any harm to the reach-and-apply defendant.

**4)** **Public Interest**

Congress declared it to be the policy of ERISA to "protect . . . the interest of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and ready access to Federal courts." 29 U.S.C. §1001(b). The House Report on the Act's enforcement provisions states that they are

> designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act. The intent of the committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities . . .

H.R. Rep. No. 93-533, 93d Cong., 2d Sess. 17, reprinted in [1974] U.S. Code Cong. & Ad. News, p. 4639, 4655.

The federal courts have interpreted this legislative history as "unambiguous evidence" that Section 502's enforcement provisions are intended to "have teeth" and to be "liberally construed." Northwest Concrete, supra, at 1352. "Given the array of remedies that ERISA provides for redressing and preventing violations of the statute, it is not surprising that federal courts have frequently resorted to injunctive relief when it has been perceived as necessary to fully protect the statutory and contractual rights of Fund participants and beneficiaries." Metropolitan D.C. Paving Industry Employees Health and Welfare Trust Fund v. Jones & Artis Construction Co., 2 EBC 2227, 2223 (D. D.C., 1991).

"Congress made it abundantly clear that an employer would not be permitted to circumvent or ignore its funds, payment and other obligations under ERISA." A & G, citing Northwest Concrete, supra, at 1352.  The public interest in preserving the integrity of employee pension, health, and welfare plans would be furthered by issuance of the preliminary injunction.

## IV.  CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully submit that their Motion for Preliminary Injunction should be granted.

        Respectfully submitted,

        PAUL J. MCNALLY, as he is
        TRUSTEE, MASSACHUSETTS
        LABORERS' HEALTH AND WELFARE
        FUND, et al,

        By their attorneys,

        /s/ Gregory A. Geiman
        Anne R. Sills, Esquire
        BBO #546576
        Gregory A. Geiman, Esquire
        BBO #655207
        Segal, Roitman & Coleman
        11 Beacon Street, Suite #500
        Boston, MA  02108
        (617) 742-0208

Dated:  May 5, 2005

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction has been served by certified and first class mail upon the defendant, G. Conway, Inc. at P.O. Box #273, Charlestown, MA  02129 and by first class mail upon the reach-and-apply defendant, Bowdoin Construction Corp. by its attorney John J. Gallagher at the Law Offices of Warren H. Brodie, P.C., 40 Grove Street, Suite #220, Wellesley, MA  02482 this 5th day of May, 2005.

        /s/ Gregory A. Geiman
        Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 6306 04-479/memsupmotpj.doc